UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN SIROTA, <br><br> Plaintiff, <br><br> v. <br><br> UNIFUND CCR PARTNERS, INC., <br><br> Defendant. | CIVIL ACTION 1:14-cv-03408 <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

COMPLAINT FOR RELIEF PURSUANT
TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

NOW COMES the Plaintiff, BRYAN SIROTA ("Bryan"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, UNIFUND CCR PARTNERS, INC. ("Defendant"), as follows:

## NATURE OF THE ACTION

1. Bryan brings this action for damages for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA") and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et. seq. ("ICFA").

## JURISDICTION AND VENUE

2. This action arises under, and is brought pursuant to, the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k (FDCPA) and 28 U.S.C. §§1331, 1337, as this action arises under the laws of the United States, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391; Defendant conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

1

## PARTIES

4. Bryan is a natural person who resides in the Northern District of Illinois and is a "consumer," as defined by the FDCPA, 15 U.S.C. §1692a(3).

### Unifund

5. Unifund is a corporation with headquarters located at 10625 Techwoods Circle, Cincinnati, Ohio 45242.

6. Unifund is in the business of taking title or claiming to take title to charged-off debts allegedly owed by consumers and originally owed to others.

7. Unifund then seeks to enforce the alleged debts against the consumers through lawsuits.

8. The mails and telephone system are used in connection with the prosecution of the Unifund lawsuits.

9. Unifund is a "debt collector," as defined by the FDCPA, 15 U.S.C. §1692a(6).

## FACTS SUPPORTING CAUSE OF ACTION

10. Unifund has been attempting to collect from Bryan a debt alleged to have been originally owned by CITIBANK (SOUTH DAKOTA), N.A. ("Citi, or Citi account").

11. On September 9, 2013, Unifund filed a complaint in the Circuit Court of DuPage County, Illinois against Bryan. The case was captioned *Unifund CCR Partners v. Bryan M. Sirota*, case number 2013 SC 4720 ("Collection Case"). *See* Exhibit A, a true and correct copy of the September 9, 2013 complaint ("Unifund's Complaint").

12. In the Collection Case, Unifund alleges that it purchased and now owns the Citi account. The Collection Case was solely supported by the affidavit of Elizabeth Meents ("Meents"), a purported employee of Unifund. *See* Exhibit A.

**The Debt Buying Industry**

13. Unifund is a debt buyer. Debt buying is the practice of purchasing charged-off debts from debt originators, or other debt buyers. These debts are purchased in bulk and are usually credit card debts.

14. Debts sold by original creditors are typically bundled into portfolios because bundling accounts into portfolios reduces the transactions costs of exchange. *See* Federal Trade Commission, The Structure and Practices of the Debt Buying Industry, January 2013, available at http://www.ftc.gov/reports/structure-practices-debt-buying-industry (last visited March 5, 2014) ("FTC Debt Buyer Report").

15. When purchased, these bundled account portfolios are transferred via electronic data files that contain only a few data elements from the original account records. When printed out, the electronic evidence of the sale, or data file, consists of one line per debtor.

16. The typical data file contains the original account number, the name of the consumer, the address of the consumer, the last balance purportedly owed, the date of the last payment, and the date that the account was charged-off. *Id.* at pp. 34-35.

17. Debt buyers generally do not obtain the original account records (the day-to-day transactions on the account that are generally made at or near the time of each transaction, in the normal course of business) related to the purchased debts. For most portfolios, buyers do not receive any documents at the time of purchase. Only a small percentage of portfolios include documents such as account statements or the terms and conditions of credit. *Id.* at p. iii.

18. The data files obtained by debt buyers are not the original account records that were created in the regular course of business by the credit originator—they are created prior to

3

the sale of a portfolio of charged off debts. They are created for sale to a third party, and are not created in the regular course of servicing the credit card account.

19. Furthermore, debt sales are typically "as-is," with limited or no ability to obtain additional information from the original creditor. *See* FTC Debt Buyer Report at p. 25.

20. Where different debt buyers enter into purchase and sale agreements with the same seller, the structure, organization, and phrasing of these agreements are virtually identical. *Id.* at pp. 24-25.

21. Unifund relied on the information that it allegedly obtained from Citi (the data file) when it filed the Collection Case.

22. However, Unifund had absolutely no assurance that the information it received was accurate because, on information and belief, Citi allegedly sold its debts to Unifund in "as-is" condition.

23. The information on which Unifund relied to file the state court action would not be considered satisfactory evidence if submitted to court. A document is not admissible as a "business record" under Illinois law if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness …" Illinois R. Evid. 803(6).

24. It is common practice in the industry to purchase debts without obtaining original account information due to the time and cost of obtaining such documentation.

### Pattern and Practice in State Court Collection Actions

25. Unifund routinely files state court collection actions with no more evidence of the debt in question than the single line data file described above.

26. Unifund knows that the information on which it relies to file the state court collection actions will not be supported with adequate evidence, yet Unifund is not willing or not able to obtain such evidence.

27. Usually when Unifund files a collection action it obtains a default judgment against the consumer.

28. Upon information and belief, the default rate in such lawsuits may be as high as ninety percent.

29. The default rate is so high in the collection actions because Unifund serves the consumer with a complaint and affidavit affirming Unifund's ability to prove the information contained therein.

30. The purpose of such affidavits is to deceive the consumer into believing that Unifund can prove the case at trial and to intimidate the consumer into payment.

31. The collection case affidavits are deceptive because they purport to be based on a review of business records, and that the affiant has "personal knowledge," and is "competent to testify" as to the information alleged in the Unifund complaint. *See* Exhibit A. In truth, the affidavits are created from the one line data file that Unifund allegedly purchased "as-is."

32. By submitting such an affidavit to the consumer, while concealing documents in which the alleged account seller effectively disclaims the accuracy of its records and information, Unifund perpetrates a fraud on the consumer.

33. Accordingly, the consumer is discouraged from defending the lawsuit or challenging the allegations contained in the complaint and affidavit.

34. Unifund actively conceals the nature of its defective standing; an unsophisticated consumer would not know that these as-is purchase agreements exist.

35. An unsophisticated consumer would not be aware of the elements of the business records exception to the rule against hearsay.

36. When Unifund files a collection action against a consumer, it implicitly represents that the allegations and factual contentions contained in the complaint and affidavit are backed by evidentiary support. Federal Rule of Civil Procedure 11(B)(3) states:

> Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> []
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery
>
> Fed R. Civ. Proc. 11(B)(3).

37. In these *ex parte* collection actions Unifund does not disclose to the court that it has not conducted a reasonable investigation into its claims or that it would never have presented evidence to support its claims. *See* Comment 14 to Rule 3.3 of the Illinois Rules of Professional conduct, which states: "… in any *ex parte* proceeding … [t]he lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision."

38. Unifund does not conduct a reasonable investigation into a debt's existence in the collection actions it files; rather Unifund intends to obtain a default judgment against the consumer by representing to the consumer and the court, through the filing of its complaint and affidavit, that it has evidence to support the claims stated therein.

39. This practice amounts to an unfair, deceptive and improper use of the court system in connection with the collection of a debt.

40. Once the default judgment is entered Unifund can proceed to garnishment regardless of whether it could have proven its case at trial.

41. Unifund routinely voluntarily dismisses cases where the consumer appears before the court to defend the action in order to protect its business model and avoid losing at trial.

### Bryan's Defense of the Collection Case

42. On September 20, 2013, Bryan retained Sulaiman Law Group, Ltd. to defend the Collection Case ("Defense Counsel").

43. On October 10, 2013, and October 16, 2013, respectively, Bryan, via Defense Counsel, filed his appearance and Motion to Dismiss, based on Unifund's lack of standing because Unifund's complaint and Meents affidavit did not demonstrate ownership of the Citi account. *See* Group Exhibit B, a true and correct copy of Bryan's appearance and Motion to Dismiss.

44. On October 30, 2013, Bryan, via Defense Counsel appeared in court to present his Motion to Dismiss, and a briefing schedule was entered setting a hearing on Bryan's Motion to Dismiss on December 18, 2013. *See* Exhibit C, a true and correct copy of the October 30, 2013 Order.

45. Unifund did not adhere to the court-ordered briefing schedule on Bryan's Motion to Dismisss. On December 11, 2013, Unifund filed a Motion for Extension of Time to File Amended Complaint, claiming it needed additional time to "procure all of the requisite information." *See* Exhibit D, a true and correct copy of Unifund's Motion for Extension of Time to File Amended Complaint.

46. On December 18, 2013, instead of a hearing on Bryan's Motion to Dismiss, the Collection Case was continued to January 22, 2014, and Unifund was granted leave to amend its Complaint by January 8, 2014, as it claimed it had documents that would demonstrate its standing. The court noted that the filing of an amended complaint would render Bryan's Motion to Dismiss the original complaint moot. *See* Exhibit E, a true and correct copy of the December 18, 2013 Order.

47. Despite Unifund's continued assertion that it could demonstrate its standing and would be presenting its case at trial, and without filing an amended complaint, Unifund voluntarily dismissed the Collection Case on the next status date. *See* Exhibit F, a true and correct copy of the Collection Case order entered on January 22, 2014.

48. It can be reasonably inferred that Unifund voluntarily dismissed the Collection Case because Unifund knew that it could not demonstrate the accuracy of the information contained in its complaint, or that it even owned the Citi account at all.

49. The Illinois Code of Civil Procedure requires that a plaintiff provide notice to the defendant when the plaintiff intends to voluntarily dismiss its case. *See* 735 ILCS 5/2-1009.

50. Unifund never provided Bryan with formal notice of its intention to dismiss its case—notice was not provided in writing, no motion was filed with the court, and Defendant's Counsel did not receive even verbal notice until the day of trial.

51. Even if Unifund had intended to take the Collection Case to trial, it would have been unable to prevail at trial due to its lack of evidence demonstrating ownership of the Citi account and the accuracy of the information contained in Unifund's complaint described above.

52. By operation of law, Unifund has one year or until the statute of limitations expires, whichever is longer, to re-file its case against Bryan.

8

53. Bryan is left to wonder when or if he will be served with another summons containing another deceptive affidavit.

54. This uncertainty has caused Bryan significant stress and emotional distress.

55. Bryan was harmed by Defendants' unfair and deceptive practices because he had to spend time and energy defending against Unifund's frivolous lawsuit.

56. Bryan was further harmed by Defendants' unfair and deceptive practices, as he incurred costs defending against Unifund's frivolous lawsuit, including retaining counsel.

## COUNT I - VIOLATION OF FDCPA

57. Bryan repeats and realleges paragraphs 1 through 56 as though fully set forth herein.

58. The Collection Case was an attempt to collect a "consumer debt" as defined by the FDCPA, 15 U.S.C. §1692a(5).

59. Unifund violated 15 U.S.C. §§1692d, 1692e, e(2), e(5), e(10) and (f) by filing the Collection Case based on unverified account information.

60. Unifund violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; Unifund's filing of the Collection Case, while knowing that it could not prevail at trial, and would dismiss the Collection Case if challenged, served only to harass Bryan in an attempt to improperly collect on the Citi account.

61. Unifund violated 15 U.S.C. §1692e and e(10) by using a false, deceptive, or misleading representation or means in connection with the collection of any debt. The filing of the Collection Case was false and deceptive because Unifund could not demonstrate ownership the Citi account. As discussed above, the false Meents affidavit was intended to deceive and

9

intimidate Bryan into paying Unifund on the Citi account by misrepresenting the evidentiary support for the claims asserted therein, including that Unifund purchased the Citi account and the balance due. Alternatively, Unifund's Complaint and Meents affidavit are inherently deceptive, false, and misleading because they are based on unverified information that Unifund acquired "as-is" (the single-line data file); not the original account records. Yet, in her affidavit Meents states she is "competent to testify to the matters stated herein." See Exhibit A.

62. Unifund violated 15 U.S.C. §1692e(5) by threatening to take action that it did not intend to take when it filled the Collection Case knowing that it could not prevail at trial, and that it would dismiss its case if challenged. As stated above, Unifund does not intend to prove its case at trial; rather its business model is to obtain a default judgment or dismiss the action to avoid getting caught and losing at trial. Furthermore, in the Collection Case against Bryan, Unifund continued to assert its ability to prove its case up to the morning of trial, all the while knowing it did not intend to stand trial.

63. Unifund violated 15 U.S.C. §1692e(2) by falsely representing the character, amount, and status of the Chase account because Unifund did not own the Citi account. Even if Unifund did own the Citi account, it would have no way of determining the amount claimed. Thus Unifund's assertions as to its ownership and knowledge of the Citi account information set forth in the Unifund Complaint and Meents affidavit were false.

64. Unifund violated 15 U.S.C. §1692(f) by using unfair means to collect or attempt to collect any debt; Unifund's filing of the Collection Case, while knowing that it could not prevail at trial, was unfair because Bryan had to spend time and money defending against a frivolous lawsuit. Moreover, Unifund's pattern and practice of filing collection actions against consumers, without conducting a reasonable investigation into its claims or disclosing its lack of

evidence, with the intent of obtaining a default judgment, amounts to an unfair debt collection practice effectuated through the courts. This practice is unfair to the consumer and against public policy.

65. Unifund was aware at the time that it allegedly purchased the Citi account that any data it received was being sold "as-is" and that it could not verify the accuracy of the data.

66. Nevertheless, Unifund filed the Collection Case in order to induce Bryan to pay the money that Unifund alleged was owed.

67. Unifund's Complaint is a material violation of the FDCPA because Unifund effectively represents to consumers that it can prove ownership of the alleged debt when it cannot.

68. It is Unifund's regular business practice to file claims against consumers even though it cannot verify the data in its complaints.

69. As pled in paragraphs 54 through 56 above, Bryan was harmed by Unifund's unfair and deceptive practices.

70. Bryan is therefore entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k.

### COUNT II - VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFA")

71. Bryan restates and realleges paragraphs 1 through 56 as though fully set forth herein.

72. Unifund violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in their efforts to collect an unverified debt from Bryan; Unifund's active participation in the Collection Case, while knowing that it

could not prevail at trial, was intended only to deceive Bryan into thinking he would have to pay Unifund to avoid a judgment against him.

73. Unifund does not conduct a reasonable investigation into a debt's existence in the collection actions it files; rather Unifund intends to obtain a default judgment against the consumer by representing to the consumer and the court, through the filing of its complaint and affidavit, that it has evidence to support the claims stated therein.

74. Unifund's pattern and practice of filing collection actions against consumers, without conducting a reasonable investigation into its claims or disclosing its lack of evidence, with the intent of obtaining a default judgment, amounts to an unfair debt collection practice effectuated through the courts.

75. Unifund's pattern and practice described above amounts to an unfair, deceptive and improper use of the courts in connection with the collection of a debt.

76. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

77. Bryan is a consumer as defined by ICFA, 815 ILCS 505/1(e).

78. Unifund's attempt to collect a debt is part of the conduct of any trade or commerce as defined by ICFA, 815 ILCS 505/1(f).

79. The Collection Case and the related complaint and Emeents affidavit represent the use of deception, fraud and false pretense in an attempt to collect an unverified debt.

80. Unifund's active concealment of its lack of evidence to support its claims represents a material misrepresentation, made in the conduct of trade or commerce.

81. Unifund intended that Bryan rely on its misrepresentations and pay Unifund for the Citi account.

82. Additionally, Unifund's abusive trial strategy was inherently unfair to Bryan — Unifund represented that it could prove its case at trial, and that it would be able to demonstrate its standing to sue by amending its Complaint. All the while, Unifund never intended to go to trial or amend its Complaint.

83. As a result of this unfair and deceptive conduct, Bryan had to expend time and money defending against a lawsuit that Unifund had no intention of litigating.

84. Unifund intended that Bryan rely on their misrepresentations.

85. ICFA further states:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper.

815 ILCS 505/10a.

86. Bryan was harmed by Unifund's unfair and deceptive practices because he had to spend time and energy defending against Unifund's frivolous lawsuit.

87. Bryan was further harmed by Unifund's unfair and deceptive practices as he incurred costs by retaining counsel to defend against the frivolous lawsuit.

88. Bryan was also exposed to significant emotional strain as a result of the Unifund's unfair and deceptive business practices.

89. Moreover, upon information and belief, these unfair and deceptive practices are part of a pattern and practice of behavior in which Unifund routinely engages as part of its business model.

90. An award of punitive damages is appropriate because Unifund's conduct described above was willful and wanton, and showed a reckless disregard for the protections afforded by ICFA, and Bryan's rights thereunder.

91. As such, Bryan is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff, BRYAN SIROTA, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff actual damages and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. ordering the deletion of all adverse credit reporting related to the alleged debt;

d. awarding the Plaintiff costs and reasonable attorney fees; and

e. awarding any other relief as this Honorable Court deems just and appropriate.


Dated: May 9, 2014                    Respectfully Submitted,

/s/ Daniel J. McGarry
Mathew H. Hector, Esq. ARDC#6283058
Daniel J. McGarry, Esq. ARDC#6309647
Counsel for Plaintiff
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188